May it please the Court. Good morning, Your Honors. Joanna Schiavone on behalf of the appellant Kenneth Carter. I'd like to reserve two minutes for rebuttal. Well, welcome back, by the way. You were here earlier in the week. Thank you. I'd like to reserve two minutes for rebuttal, and I will watch the clock. So I plan to focus today on the two revocation counts subject to any of the Court's questions on either of the sentencing issues. On the two revocation counts, I really see that there are four main points. The first two are sort of set-up points for the third point, which I think is really the crux of the revocation count challenge. And so the first two points I'll address quickly, although if you have any questions, I'm happy to answer them. On the first point, it's really related to the gun threat. Since the district court rejected that as a basis for revocation, I'm addressing it only to the extent that the government is now advocating that this court make fact findings on appeal and find that the officer's testimony was more reliable than my client's testimony. But the district court rejected that, and there's been no. But he did say that the officer believed it, right? But the court squarely rejected and said he was not relying on the gun. He wasn't relying on whether he had it, but did he? But he wasn't relying on the gun count as a basis for revocation, and he made that very clear then at sentencing and said that's now out of the case. But isn't it relevant to the, to whether there was probable cause to ask him to come out? Well, the government actually didn't ask. They, the court did make a probable cause finding with respect to the stop of the vehicle, and the court said there was probable cause with respect to that. But the court never made a probable cause finding, the government didn't ask for one, with respect to that, the threat. And the court set that aside. But didn't the court say that it was reasonable for the officers to believe that he had said he was going to get a gun? So even if that's the case, Your Honor, so even if that's the case, the court rejected it as a basis for the revocation because of the significant dispute with respect to credibility. And so the court said, I am not relying on the threat because I understand there is disputed evidence, and even if, even if it was made or even if it was reasonable for the officer to, to, to believe it was made, the court discarded that as a basis for the revocation. And so I don't think it would be a proper basis for this Court to rely on because it would resolve, require resolving those disputed issues of credibility. And the Didn't the district judge specifically say that there was going to be no finding made? Yes, and the, and the, and so it's our contention, Your Honor, that that would require a showing of clear error, and that it hasn't been, because it's a factual finding. The court said, I'm not going to resolve this disputed credibility issue. I'm, I'm, I'm taking this out of the case. And then even at the sentencing, the court said, you know, that piece has dropped out of the case. Government, don't you acknowledge that? Defense counsel, don't you acknowledge that? So in the district court's mind, that was, it had, that piece had fallen out of the case based on its finding that it wasn't going to make a finding, essentially, Judge Wallace. And so it's our position that under the clear error standard, the government hasn't made a showing that that was clear error. They're now saying, the judge didn't make a finding, and so this court can make the finding in the absence of a finding. It's our position that would require this court concluding it was clearly erroneous to not make the finding. Well, the court, the district court found that there was a new law violation,   And so that's really the issue. On three grounds, on two grounds. Yes. And whether or not the facts are sufficient to support that finding. Yes. And so that, I'm sorry, Judge Berg, go ahead. Because he also found that there was reasonable basis to believe that the officers were facing a threat and felt justified in arresting the defendant. And so that really goes. Would that not mean that his delay. Yes. In not coming out was a sufficient basis for a new law violation. Exactly. For interfering with the officers. And so that gets to point sort of three. So then the second point in there was about the verbal threat and the speech issue, which I don't think the government is saying that the speech was improper. And so it gets then to the third point, right? Is there a new law violation based on the delay? Which I think is the crux of your question. And I really think the tough issue here. And the question then is under, we have sort of two competing bodies of California law, or at least two buckets as I see it. We have the In re Chase C case and the Kiroga case, and then we have the Muhammad case. And the question is, which is this case more like under California law? And with respect to the delay. And it's our position that the 15 to 20-minute delay falls closer to the Kiroga and Chase C circumstances. Well, can I ask a question? Yes. If they didn't, if there was no finding of probable cause to arrest him, and that's your position, there wasn't one. It is. There was no finding of probable cause. Then what authority do they have to have him to make, tell him to come out of his house? So that's. What's the difference if there was delay or wasn't delay? I mean, why is it a lawful order to somebody to come out of your house if you have no reason to tell him to come out of your house? There, I guess, Your Honor, that is one lens through which to look at the case. And the question is, they were investigating. And part of the challenge here, I think, Your Honor, and part of the challenge for me in articulating on appeal was the only ground argued below, the only statute invoked was PC, California Penal Code 69. And that's about the threat, and it was specifically related to the gun. Well, I understand. So if there's no finding of a threat and no finding of probable cause, if I'm in my house, or let's say the scenario was he had yelled and screamed at the police and they were upset about it, and so when he went in the house, they yelled to him, they told him he had to come out of the house. Do they have any right to tell him he has to come out of his house? Certainly, Your Honor, that is another way to analyze the case. Is it a right way or a wrong way? Yes. Yes. And there was no – so part of the challenge, as I'm trying to say, is because 148A was not at issue. The government didn't invoke it before. They didn't address the elements. They didn't argue the elements. And they also didn't ask for a probable cause finding. And I can find in the record where the Court made the probable cause finding. And I have another question. Yes. Even with probable cause. Yes. If the – do they then have the right to order him out of the house as opposed – I mean, at least there's a set of cases that say that if you surround the house, you essentially have seized the person and you need a warrant before you can actually go into the house. So maybe there was an exigency. But none of this was litigated either, right? Right. I mean, maybe there was an exigency if they thought he had actually made the threat. Maybe there was. And maybe, therefore, they could do that. But there's no findings to underlie that either. Yes. I would agree that there are no findings to underlie that. And so where I see the real question. So, Judge Berzon, you just posed the hypothetical. So if there was – if you made a finding there was probable cause or you reached that conclusion, which there was no finding below. I scoured the record. The probable cause finding was only with respect to the vehicle stop. But even if they had probable cause and even if, Judge Berg, if the basis was the belief, the reasonableness of the officer's belief based on the circumstances, our position is that even if all of that is true, under the body of cases, the Cairoga-Chase C line of cases under California law, there wasn't physical interference here. It was merely delay. It's not the Mohammed C situation where the defendant was outside of a car interfering with the investigation of a separate defendant. He physically attempted to stop the officers. Five – three officers on five occasions asked him to move. They physically had to address him in the situation. But a delay can be sufficient to be interference, can it not? Under the statutory language, certainly. And so it's really just a question of whether this delay was long enough to be sufficient. And the language, Your Honor – Isn't it? Isn't that right? Yes, but the – Well, here's a question, though. I don't know if it's – I don't know enough about California law, but it seems to me that when you say to delay the police, you mean to do something that causes them delay, but is delay in responding to an order? Is there – is Mohammed C a case in which delay in responding to an order, as opposed to doing something that delayed them? And that is actually the Cairoga and Chase C cases. And so, Your Honor, while 148A, the California statute, it comes up a lot, and I've litigated it below as well. And so there's certainly – the language itself does say delay. But what the California courts have said is there has to be some type of obstruction involved in that. It can't just be – and we know that it's very clear under Chase C and Cairoga that the courts have said the failure to respond with alacrity to a police order is not enough. That in and of itself is not meant to be a resisting offense under 148A. So that – the Court, I think, has given us clear guidance, the California courts, that delay without some type of physical interference or other obstruction, particularly where here it's combined with verbal conduct, protesting the police, which is in the sphere of the First Amendment. That really falls under the non-obstructing. There was not physical obstruction. He was cooperative when he did exit the house. It's not a scenario where he then fought. But he exited the house because they were about to breach.  Breach the door. They were going to breach it. They were on the front porch. They had it surrounded. They made the announcements. But he didn't then fight. He didn't require them to come in. He didn't fight. He was cooperative. He didn't talk to them. He didn't refuse. Kagan. So suppose we thought that there were not findings to support this, but on their record there could be. Do we then remand the case for further findings, or what do we do? I didn't hear the first part of your question, Justice Kagan. If we thought, agreed with you, that there were – the district judge did not make findings that would support the ruling, but that on their record he might have been able to make such findings, do we then remand the case for further fact-finding or what? Not – I don't think so. And I think – and the reason that I would say that is that, again, under the Chase C. and Kairoga scenario, I think the evidence here and the findings here simply fall closer to those cases. There was – the judge did not make the findings that was visible. But if, for example, there were – he made a – he didn't make a finding on whether he said this thing about the gun, but he could have made a finding. He just didn't make one. And he could have made a finding as to whether there was at least probable cause to think that he had said this thing about the gun, but he didn't make that finding either, you say. So my question is, do we then – does he then win, or do we remand for the missing fact findings? So, Judge Berzon, on the first point with respect to the gun threat, I don't – it wasn't the fact that the judge kind of missed it and didn't have a chance. He affirmatively declined to find, yes. Well, that's right, because he thought it wasn't relevant to his view of the case and of the statute. If we thought it is relevant – I mean, in other words, in his view, all the yelling and screaming was enough. If we think that's just not true – I mean, because that seemed to be where his emphasis was. Yes, I agree. If we think that's simply not adequate for First Amendment and other reasons, then what? Do we say that because the judge looked at it wrong, there's no violation, or do we then tell the judge to look at it through a more appropriate lens? I think under the – an evidentiary hearing was conducted. The government had a chance to make its case. They had a chance to bring forward California law. They had a chance to meet the elements. The court rejected their first – Well, my understanding was they tried to, and it was their position, I think, that he did make the threat. Yes. And the district court – And the judge declined to make that finding, but he could find it one way or another. But it's our position, Your Honor, that because he declined to find it and the government hasn't, again, made a showing that was a clearly erroneous view of the evidence, a finding is sort of equivalent to a non-finding when the court says affirmatively I am not going to make a finding on credibility. He said – No, that isn't what he said. He said I'm not going to make a finding as to whether or not the defendant shouted, I'm going to get a gun. That was it. Yes. It was not to do with credibility or anything else. But the police officer said I think that he said when he reported. So you have before you no finding of what he said, but you have the police officers thinking that he said I'm going to get a gun. So based upon that, it seems to me that it's very difficult to not affirm the police believing that there may be a gun involved. So you would go that far, wouldn't you? I wouldn't agree with one portion of that, Judge Wallace. And the portion I wouldn't agree with is that the court actually did say there's a credibility dispute and I am not going to resolve it. I also agree. That may be true, but he's resolving only one part of it. That is what the defendant said. He's not resolving what the police officer said later on. Let me ask you another question. Yes. Isn't he due to have served all of his time for this? So I was going to update the court. The end of the sentence expires on May 9th. He has last week been released into a halfway house. He's serving the remaining portion of his custody. What do you want us to do on this? He's already served his time, and even if you're right, unfortunately, he's served his time. What can we do? Isn't it sort of mooted out? Well, it's the reason I, and I appreciate that the court granted expedited status because of the nature of short sentences in these cases. It's important, it was important to my client to pursue the litigation. It is important to the criminal history. As you know, Judge Wallace, revocations are part of the history. It does have future importance. If there was insufficient factual and legal basis to uphold these two revocations, I mean, let's not forget he was charged with four counts. That revocations do moot out, unlike sentences. Do you have some authority for the opposite position? So it's not moot yet. He still is in confinement. Well, I understand that. Yes. Because he's still confined. I mean, he's still in a halfway house under that supervision. Right. Until May 9th. So if we decide it before May 9th, it's not moot. That's the end. Essentially, yes. And I think this is a significant enough issue with respect to how Federal courts are going to apply it. This is an issue that's very frequently litigated in the State courts. You can tell it comes up a lot in minors, with respect to minors and the 148A offense. And I think it's significant for, particularly for if this kind of statute is going to be invoked for supervised release revocation. I mean, it wasn't cited by the government here as the basis. But if it's going to be relied on, I think it would be important to have some guidance from this Court. And it wasn't, in fact, prosecuted in State court. It was not. So the district attorney dismissed, which is another issue in terms of there was no probable cause finding there. They didn't pursue the case. They dismissed it on the first day of trial. Okay. Your way of judging something. The only thing you're working towards is having less of a record in case he gets into mischief in the future. That's true, Your Honor. But it's not an insignificant point for my client. Well, it's not. It's not. Anyone who's sentenced, people knows that. And so the only other point, I'm sorry I'm so over my time, is that that fourth point was about the lack of evidence on the knowledge on the felon association issue. I think it's significantly briefed. If the government addresses it, I'm happy to answer questions.  Thank you very much.  Good morning, Your Honors. May it please the court. Amanda Beck for the United States. Before I begin, I just want to say quickly, the government's brief included a citation to City of Columbia. That was an error, and I apologize. Your Honors, Mr. Carter's sufficiency challenges fail. And he was sentenced to a reasonable sentence. I believe I should start with some of the questions that you were asking the appellant. We're not requesting here for you to make fact findings. Instead, we're asking you to apply the standard of the law, which is to review all of the evidence in the light most favorable to the government, and then to make a decision. And I think that's a violation. Well, but go ahead. Doesn't it matter whether there were fact findings made on conflicting evidence? Made of? In other words, we can't do it ourselves. In other words, if there was conflicting evidence on some issue, i.e., did he say this thing about the gun or not, and the district court completely refused to, I mean, I don't mean refused. Because he had reason in his view of the case not to do it, not to make a finding. But if we believe that his, the findings he did make are inadequate, then what? Then, Your Honor, I believe you review all of the evidence and decide whether in the light most favorable to the government it supports the violation. Oh, but that can't be true. That's the standard as articulated in King, Your Honor. So there was evidence here presented by the defendant. No, in other words, if we think that the evidence, there was sufficient evidence on which you could find that he made the threat or at least you could find that the police believed he made the threat, then we do it even though the district court didn't? Yes, Your Honor. What you find is that whether any reasonable trier of fact would have on this record been able to find the elements of the violation. Really? So what you would do is not worry about whether there's a finding of fact. You would just take that the police officers thought there was a gun and acted accordingly, and with the deference we give them, you get by. And that argument is a fair argument. But would you move to another one having to do with whether or not you've proven in a record that the defendant knew that his stepson was a convicted felon? I mean, we might all think that he should have known, but the telephone call was apparently from the stepson to his mother, and she said, come over. There's nothing to indicate in the record the defendant was ever involved in that, and there's nothing in the record that indicates that he knows he's a felon. Now, we all understand that perhaps he must have because he's his stepson, but I don't think perhaps he must have get you past a criminal process. So why is there enough evidence for that? And I'm saying this because it has to go on his record in case he violates in the future. Yes, Your Honor. Thank you. The evidence that supports the finding that Mr. Carter knew of Mr. Packard's felon status is circumstantial, but it includes, and here's a small correction, Your Honor, the fact that Mr. Packard used his own cell phone not to call his mother, but rather to call Mr. Carter from the phone. That is in the record, and it was elicited primarily at the detention hearing and then again at the violation hearing. Mr. Packard, when he was in the situation where he felt vulnerable, used his cell phone to access a contact that was saved under the alias of Mr. Carter. He goes by the name Skillett. The officer could see that Mr. Packard was calling someone named Skillett and then telling Skillett that the police were harassing him. But for example, he asked whether he could come over is my understanding. His initial call seemed to be that. Yes, Your Honor. Right. And but the assumptions of the one of the underlying factual assumptions that from which an inference is supposed to be drawn is that he lived there. If he lived there, why would he be asking if he could come over? Your Honor, I can't explain why he would ask to come over. What he told the police. Because he didn't live there. What he told the police is that he lived in the duplex. He didn't say that he lived in the portion where his mother lived. His probation record said that he lived in the adjoining section of the duplex. So that may be why he asked whether he could come over also. Can I go back to the original premise on the other? I've looked at King. I mean, I was just really taken aback by your assertion that we are not, that we can make essentially look at the record without regard to any fact findings made by the district court. And I absolutely do not read King as saying that. What it says is that he argued that insufficient evidence supports three of the district court's violation findings. On a sufficiency of the evidence challenge, we ask whether viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation. But that seems to me to go back to the findings. It's not you make up your own findings. So here, Your Honor, I would say that the King reference to violation findings is the finding that the defendant violated. Kagan. There is no other instance that I know of in which we look at a blank record without regard to what the district court found. And not only that, I mean, what the district court found influenced what he ultimately did in the sentence. If he found something else, I don't know what he would have done. Here, Your Honor, there are facts sufficient to support a finding that the defendant violated his supervisory lease by resisting arrest. In what specific way? Ample. To begin with the questions, Your Honor. And what specific way based on findings? The district court specifically found that the officers had reasonable cause to investigate the Buick. He also then specifically found that the defendant of his own initiative and not at the command of the officers ran away from them and went into his home. He found that the officer had a genuine belief that Mr. Carter had made the gun threat. He found that that fear of the threat was legitimate and reasonable. He did not say the words probable cause, but he specifically said it was reasonable and legitimate and genuine, and that based on that, Mr. Carter's refusal to come out of the house for 15 to 20 minutes when he admittedly could hear the police announcing his lawful arrest, that that was interference with police activity. Those are the findings of the court. They are sufficient to support a finding that the defendant violated the terms of his supervisory lease by resisting arrest. And the trial court seemed much more concerned in general with what had gone on outside in the hullabaloo and so on. I know you said that, Your Honor, but actually he makes two separate findings. He says first that the defendant was yelling at the police, and he makes a specific finding that he was doing that, and that- Which hearing are we talking about now? Which argument? Hearing. Which hearing? The violation hearing, Your Honor. At 409, the judge finds that the defendant was swearing and running back into the house and that that was interference with a law enforcement officer's lawful duties. Then at 409 to 410, and again on 412, the court additionally finds that Mr. Carter's refusal to come out of the house, even though he could hear the commands ordering him to do so, was interfering with his lawful arrest. So those are the findings that the court made, and they are sufficient to for you to affirm and say that the lower court had a reasonable basis for finding the violation. And there are the two cases that seem to say that delay isn't a violation of the statute, and you think the other case, Mohamed C., is sufficient. Was that just about delay or was that some physical interference? Mohamed C. was largely about delay. In that case, the defendant also did hold up his hand to the officers and sort of acknowledge their warnings to him and then ignore them. The standard set out in Mohamed is particularly instructive here because that court said that delay is constituted by refusing repeated requests. It's constituted by defiance. And here that's exactly what the defendant did. He admitted to it. He said that for 15 or 20 minutes he could hear the police outside saying, you're under arrest. The judge found that that was a lawful arrest, and yet he defied the officers. He refused to obey their lawful orders. Judge Wallace, I'd like to get back to one of your questions about the knowledge of the felon conviction. Can I ask a question about that as well before you do that? Yes, of course. You've implied that circumstantial evidence is sufficient, and you've indicated that there was a telephone call to Mr. Carter that was from the individual that had the felony conviction. But what evidence do you have of knowledge by Mr. Carter other than his having been exposed to this individual? What evidence is there that Mr. Carter was, in fact, aware of the felony? Our evidence that Mr. Carter was aware of the felony is this. First, that he says that he lives in the duplex. Again, this is association. Yes. I'm giving you association. The record shows that he did, in fact, know this person and that he was married to the mother of that person, correct? Yes, Your Honor. What do you have other than those facts that would allow one to conclude where you have to prove this by a preponderance of the evidence that this Mr. Carter knew about the felony conviction? You do recognize that's your burden, right? You have to show knowledge. We do have to show knowledge. How do you show it? In this case, we do it with circumstantial evidence. That includes not only Mr. Carter's association with his mother, sorry, with Mr. Packard's mother, with Mr. Packard's living at the residence, with Mr. Packard's mother, with Mr. Packard's mother, with Mr. Packard's mother. It also relates to the timing of Mr. Packard's felony conviction. That felony conviction took place only two months before the incident at issue in this case. It was one month after Mr. Carter had been released from his inpatient drug treatment. I mention this because it's not as if Mr. Packard was convicted 10 years ago, and by the time Mr. Carter came into the picture, he might not be aware of it. Instead, it happened approximately 60 days before this incident. That is strong circumstantial evidence that this would have been something that Mr. Carter was aware of. That is the evidence that we have to support the knowledge. Doesn't that sound more like it's that he should have known rather than that he did know? We believe it's both, that he should have and that he did, Your Honor. And a preponderance of the evidence supports the finding that he did. Did the district court make an actual finding of fact that he did know? No, Your Honor. My record of the district court findings is that Mr. Carter admitted to knowing who Joseph Packard was, that Carter had interacted with Mr. Packard several times, and that those interactions were violations of the condition. So we really don't have a finding by the district court of actual knowledge, you're assuming? It's very logical. I can understand it, but I'm not sure that that gets you across what you need to confine a person to jail, that it's logical and they're closely associated when it makes a big difference as to how much time he served. Of course, Your Honor. We would point the court towards King, where in that case, the Ninth Circuit, this court, did find that the defendant could learn of another person's felon status from other people, and in conjunction with other evidence that was sufficient  Well, it may be sufficient, but it would be sufficient if you had a finding by the district court. Yeah, we're back in the same place again. Right? Are you really standing here and telling us that we can do this without a finding by the district? To take this example, that without a finding by the district court that he knew it's sufficient. We can just say so. Yes. And what, and your only authority for that is the King case, and this is a completely unique circumstance in all of the law in which we make findings in the appellate court. My understanding, Your Honor, is that you review the evidence in the record and decide whether any trier of fact would find it sufficient to justify the violation, the finding of the violation. So your answer to my question of whether this is a completely unique circumstance is yes, because we don't do it in any other circumstance, right? I mean, when you have a jury finding, sometimes you have to do something like that because there hasn't been anything specific, but there still has to be some kind of irrelevant finding. In this court, sorry, in this case, Your Honor, the relevant findings have been articulated that basically the officers had probable cause to arrest the officer. I'm not talking about that now. I'm talking because this is another example of the same problem. I agree that it ---- I'm talking about the knowledge issue. We have no finding of knowledge. We've established that. There is no finding. So we're supposed to say a reasonable person could find knowledge on this record, therefore we affirm. Yes, Your Honor. Quick question on that. If we were to find that there wasn't enough evidence to show knowledge on the prior the knowledge of the Mr. Packard's prior felony, do you agree that it would need to go back for resentencing because the court had sentenced on all of these violations, but we were concluding that one was not sufficient? I think that would have to be the answer, Your Honor. The court was very clear that he was sentencing on four violations, two of which are not contested here, two of which are. For what it is worth, the court was very clear from the beginning of this case when it was only the first two technical violations that he intended to sentence outside the guideline range if the defendant was not successful in his drug treatment. So whether there would actually be a difference in the sentence, it seems. Was successful in his drug treatment. He was almost successful. He was on the verge of completing his drug treatment. I understand that it was supposed to officially end the next week, but, of course, he didn't make it. Okay. One final question because you're way over your time is the potential mootness of the case. What is the government's position? I gather your position is not that it's not moot now, right? Yes. And what about when he's released from the halfway house? I think it depends on your decision, Your Honor. If you affirm, then it will be moot because his sentence in the lower court was to no additional penalty. That doesn't make any sense. It's either moot or isn't moot because we don't decide something if it's moot. Well, if you decide tomorrow, it's not moot. If you decide before he's released. Well, I understand that. I'm asking if you decided on May 10th, would it be moot or not moot? I think it would likely be moot. However, if you do not affirm, I do not think it is moot because in that situation the defendant would have to be resentenced and it is possible that the lower court would sentence him to an additional term of supervised release. And that certainly would affect his record, affect his life. If we reverse, he might sentence him to more supervised release? Yes, because in this case. Are you glad he already sentenced him to 24 months? Does he have more that he could sentence him to? I believe he does because I believe that when he began this initial term of supervised release, it was to 36 months, and he had only served 5 months before he was taken into custody. Okay. That's my recollection. Thank you very much. You're way over your time. Thank you. Thank you for answering our questions. Yes, ma'am. To just quickly hit on a few points, with respect to at the end, I, I, it's my contention that if there isn't enough evidence on fraud, it was the government's responsibility to prove it. They didn't ask any questions of the probation officer. They didn't submit any documents, not fraud, knowledge of the felon status, excuse me. They didn't ask any questions on cross-exam of Mr. Carter. They had a chance. Double Jeopardy should attach to that, and they shouldn't. Or some, some form of that. They shouldn't get a second bite, essentially, Judge Wallace. They shouldn't get a second bite. It hasn't been briefed on that relief element. So if you wanted a very quick briefing. Well, that's a somewhat different point, then, with regard to the other counter. In other words, you may be right that they don't get another evidentiary hearing. I suppose, though, that the district court might, on the existing record, make a knowledge finding or not. And we could review it. I mean, maybe he could say on the current record there's enough for knowledge. I don't know. But he didn't do it. And I think, really, the crux of that was simply the government didn't know it had to prove it, or it wasn't evident that they knew it. And they just didn't introduce the evidence, and the court didn't make the finding as a result. Did you object at the district court level on that specific issue? Defense counsel actually did object and state that there was insufficient evidence. It's at 403, I believe, in the record, Your Honor. In insufficiency evidence on the felon status issue. I don't think defense counsel specifically articulated the knowledge piece. And part of the challenge here. But if he didn't articulate it, the district court didn't have a chance to make a finding. I don't see where the second bite of the apple has anything to do with this. I know you've got a half a step up and you want to take a full step. But I'm prone not to do it because I don't think the defense really put it before the district court. I don't think it's fair to charge the district court for something when the defense doesn't argue it. Well, but the flip side of that, Your Honor, is that the government was charging the supervisor release, revocation, and it was the government's obligation to meet its burden of proof. And the defense can challenge. But there are two questions. One is do we remand for another finding? And the second is do we remand and allow more evidence? Those are two different issues. And it goes to your mootness question. Right. Okay. In terms of timing. And so on that point, I would simply offer that I don't believe it's correct that, because he got the statutory max here. It was the highest sentence he could have gotten and no additional supervised release, revocation time. The Court said that. I don't think there's more time that can be tacked on. And so I would question that. I need to figure it out. But I don't think that's correct. All right. Your time is up. Thank you very much. Thank you both for a useful argument, very useful argument. United States v. Carter is submitted. United States v. Gratz has been submitted on the briefs. And so we go to United States of America, Boyd v. Slough.
judges: Wallace, Berzon, Berg